**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**COVINGTON**

**CIVIL ACTION NO. 04-8-DLB**

**DAVID E. BANKS**                                                          **PLAINTIFF**

**vs.**                      **MEMORANDUM OPINION AND ORDER**

**CINERGY POWER GENERATION SERVICES, LLC**                      **DEFENDANT**

**\*\*\*   \*\*\*   \*\*\*   \*\*\***

I.      Introduction

On January 26, 2003, Plaintiff was working for Defendant as a production team member.   That position required him to work in the yard operating coal off-loading equipment, and also required him to work on the tow boat, Motor Vessel (M/V) Pleasant, which moved full barges under the off loader and removed empty barges.   On that date, Plaintiff was working onboard the M/V Pleasant.   After he exited the lunchroom that afternoon he was to descend a flight of metal steps, known as tow knee steps, to assist with loosening the mooring cables from the docking barge.   As Plaintiff descended down the tow knee steps, his foot slipped and he fell on the metal steps and down onto the deck below.   Plaintiff has filed this lawsuit against Cinergy under the Jones Act and general maritime law.

Plaintiff alleges a permanent injury to his back as a result of this fall, which he claims resulted from the defective steps and that the condition of the steps made the M/V Pleasant unseaworthy.  More particularly, Plaintiff claims the tow knee steps had ice on them, were

1

uneven or worn, and were at an improper angle because the M/V Pleasant was taking on water at the back which made it heavier in the water and raised the front of the boat, changing the angle of the tow knee steps.  Defendant denies any defect in the design or maintenance of the tow knee steps, and argues it was Plaintiff's own contributory fault that caused his injury.

This matter is before the Court on Defendant's renewed *Daubert* motion *in limine* seeking to exclude the testimony of Thomas R. Huston who is alleged by Plaintiff to be an expert witness.  (Doc. # 41).  Plaintiff has filed his response in opposition to the motion.  (Doc. # 44).  Thus, the motion is ripe for decision.  For the reasons that follow, the motion is hereby **granted in part** and **denied in part**.

> **II.**   **Dr. Huston's Opinions**

Dr. Huston's opinions are based, in part, on his December, 2004 examination of the tow knee steps.  In his January 5, 2005 report, attached to Defendant's original motion in limine[1] as Exhibit 2 (*See* Doc. # 37, Exhibit 2), Huston sets forth various opinions regarding safety issues aboard the M/V Pleasant and the cause of Plaintiff's injuries.  In the course of his physical examination of the tow knee steps, Huston took various measurements of the steps and handrails.  Huston then took his measurements and compared them with several standards he derived from various sources, including:

> (1)   American Society of Testing and Materials (ASTM) F1166-88, Standard Practice for Human Engineering Design for Marine Systems, Equipment and

---

[1] Defendant's prior motion in limine was granted to the extent Plaintiff sought to have Dr. Huston opine that Plaintiff was acting as a reasonably prudent person at the time of the fall. (Doc. # 39 at ¶ 2).

Facilities;

(2)     29 C.F.R. Part 1910, Occupational Safety and Health (OSHA) Standards;

(3)     46 C.F.R. Part 72 Coast Guard, DOT Construction and Arrangement Standards for Passenger Vessels; and

(4)     the 1998 Ohio Basic Building Code.

In his report, Huston opines that the tow knee steps were unreasonably and unnecessarily dangerous because their design did not meet generally accepted safety standards for stairways and stair-ladders, did not have appropriate handrails, had an unacceptable variation in the height of the risers, and were not level.  Huston also opines that the "listing" of the vessel described by Plaintiff would have aggravated the dangerous condition, and that if snow or ice were present on the treads this would also increase the risk of human falling due to the lowered coefficient of friction of the tread.

### III.     Cinergy's renewed motion *in limine*

Defendant argues that Huston should be excluded from testifying under the *Daubert* standard.  According to Defendant, Huston lacks adequate training and education in the areas of marine design, architecture and surveying that would enable him to qualify as an expert under *Daubert*.  Defendant also argues that several of the standards upon which Huston relies are not applicable to the M/V Pleasant, which was constructed in 1990. Additionally, Defendant argues that testimony about those standards would unnecessarily prolong the trial, complicate the issues for resolution and potentially confuse or mislead the jury.

3

In his responsive pleading, Plaintiff relies upon the Supreme Court's 2002 decision in *Chao v. Mallard Bay Drilling, Inc.* 534 U.S. 235 (2002). In that case, the Supreme Court held that when there are no other standards controlling the inspection of an inland waterway vessel, OSHA guidelines control. Thus, according to Plaintiff, because there are no directly applicable standards or regulations governing stairways, stair-ladders, or handrails on vessels such as the M/V Pleasant, Dr. Huston's use of the OSHA regulations and ASTM standards was reasonable and appropriate.

## IV.   **Law and Analysis**

Federal Rule of Evidence 702 governs the admissibility of expert witness testimony. See *Daubert v. Merrell Dow Pharmaceuticals, Inc .,* 509 U.S. 579, 587 (1993). Rule 702 of the Federal Rules of Evidence states:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto.

In *Daubert,* the Supreme Court interpreted FRE 702 as requiring the trial judge to ensure that an expert's testimony is both reliable and relevant to the case at hand. 509 U.S. at 589. *Daubert's* gatekeeping obligation applies not only to "scientific" testimony, but to all expert testimony. *Kumho Tire Company, Ltd. v. Carmichael,* 526 U.S. 137, 148 (1999).

In determining whether the expert is proposing to testify to scientific knowledge that will assist the jury, the court must assess whether the methodology underlying the testimony is scientifically valid and whether it can properly be applied to the facts in issue. 509 U.S. at 592-93. Furthermore, the court must examine the expert's conclusions in order to determine whether they can reliably follow from the facts known to the expert and the

4

methodology used.  *Heller v. Shaw Indus., Inc.*, 167 F.3d 146, 153 (3d Cir. 1999).

In *Daubert*, the Court identified several factors to assist courts in evaluating the reliability of the scientific theory or methodology upon which an expert's opinion is based. These include: whether the theory or technique can be or has been tested; whether the theory has been subjected to peer review and publication; whether a technique has a known or potential rate of error and whether there are standards controlling the technique's operation; and whether the theory or method has general acceptance in the scientific community.  *Daubert*, 509 U.S. at 593-94.  However, these factors remain uncodified and by no means constitute a definitive checklist or litmus test.  *Id.* at 593.

Upon review of Dr. Huston's CV, the Court concludes that Huston's extensive background and experience in mechanical engineering, human factors, and safety analysis make him adequately qualified to testify as an expert in this case.  Although his specific expertise in "maritime design" or "marine architecture" is lacking, he has provided expert testimony in several marine cases during his career.  While Huston does have limited experience with steps on motor vessels, he is very familiar and well experienced regarding the issue of steps, handrails, stairwells and risers, as well as the OSHA code and ASTM standards regarding steps, handrails, stairwells, and risers.  Additionally, although there may not be scientific data specifically applying the ASTM standards or OSHA regulations to tow knee steps on towing vessels, such as the M/V Pleasant, Defendant has not established that reliance on those standards and regulations in this setting is unreliable. The fact that Huston's actual experience in marine cases is limited and the standards and regulations are not specific to towing vessels are matters which more properly go to the weight of the testimony rather than its admissibility.

5

Upon considering the proposed testimony of Dr. Huston, reviewing the ASTM standards and OSHA code sections, and reviewing the briefs submitted by the parties, the Court concludes that Dr. Huston is a reliable witness and that his proffered testimony meets the test set forth in *Daubert*.  However, this conclusion is limited to Dr. Huston's reliance on the ASTM standards and OSHA regulations, <u>not</u> the Coast Guard regulations relating to passenger vessels or the Ohio building code.  The *Chao v. Mallard Bay Drilling* case cited by Plaintiff in his response supports the Court's conclusion.

Moreover, Defendant's objections to Huston's opinions are proper subjects for cross examination and the presentation of contrary expert testimony.  *See Daubert*, 509 U.S. at 596 (noting that vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence).

### A.      ASTM Standards and OSHA Regulations

The Coast Guard has the statutory authority under the marine inspection laws to promulgate and enforce safety and health standards regarding working conditions of employees on vessels subject to Coast Guard inspection and certification.  *See* 14 U.S.C. § 2.[2]  For purposes of this regulation, there are two types of vessels: "inspected" and "uninspected."  *See* 46 U.S.C. §§ 2101(43), 3301.  Inspected vessels are subject to comprehensive regulation, *see, e.g.,* 46 U.S.C. § 3306, and the Coast Guard regularly inspects such vessels to ensure compliance, 46 U.S.C. §§ 3305, 3307, 3308.

---

[2]  The Coast Guard has the general authority to "promulgate and enforce regulations for the promotion of safety of life and property on and under the high seas and waters subject to the jurisdiction of the United States covering all matters not specifically delegated by law to some other executive department."  14 U.S.C. § 2.

The M/V Pleasant, however, is an uninspected vessel as defined by Coast Guard regulations.  *See* 46 U.S.C. §§ 3301, 2101(4), 2101(43); *In re: Inspection of Norfolk Dredging Company*, 783 F.2d 1526, 1530 (11th Cir. 1986) (uninspected vessels are vessels such as tugboats and towing vessels).  The Coast Guard exercises limited authority over uninspected vessels.  While not subject to the regulations specific to inspected vessels, uninspected vessels are nonetheless subject to a limited number of Coast Guard safety-related regulations.  In particular, 46 U.S.C. §§ 4101-4106 and 46 C.F.R. parts 24-28 deal specifically with uninspected vessels.  Among other things, these provisions enumerate certain required safety equipment such as fire extinguishers, lifesaving equipment, emergency radio beacons, and ventilation for tanks and engine spaces.  *See* 46 U.S.C. § 4102;  46 C.F.R. pt. 25.  A careful review of the statute reveals there are no specific Coast Guard regulations governing tow knee steps on uninspected vessels.  In fact, the only Coast Guard regulations in this area relate to passenger vessels.[3]  Simply put, the Coast Guard regulations specific to certain conditions aboard uninspected vessels such as the M/V Pleasant do not address tow knee steps, handrails, stairwells and risers.  Given this void, it is entirely proper, and the Supreme Court in *Chao* has authorized, the use of OSHA regulations by analogy.

In *Chao*, the Supreme Court was asked to resolve a conflict among the federal circuits regarding whether OSHA has the authority to regulate vessels in navigable waters or whether the Coast Guard has exclusive authority.  The Supreme Court held that while the Coast Guard has exclusive authority over inspected vessels, OSHA can regulate

---

[3]  Both Dr. Huston and Plaintiff's counsel concede that the M/V Pleasant is <u>not</u> a passenger vessel.

7

uninspected vessels in inland waters.  More particularly, the Supreme Court ruled that OSHA may enforce its own regulations with respect to working conditions aboard uninspected inland vessels as long as the Coast Guard does not affirmatively regulate the same working conditions.  More precisely, OSHA's jurisdiction over uninspected vessels in state waters is preempted only if the Coast Guard (1) issues regulations that specifically address the working condition in question or (2) asserts pervasive regulatory authority over workplace safety on uninspected vessels as a class.  534 U.S. at 243.  The Supreme Court further upheld OSHA's authority to issue citations in connection with a fatal explosion onboard an uninspected inland drilling barge because Coast Guard regulations neither addressed the occupational risks that workers aboard such vessels face, nor comprehensively governed uninspected vessels as a class.  *Id.* at 244-45.

Applying the holding of *Chao* to Defendant's motion *in limine* compels the Court to deny the motion to the extent it seeks to preclude Huston from relying upon and testifying about OSHA regulations governing steps, handrails, stairwells and risers.  For the same reasons, the Court will permit Huston to rely upon and testify about the ASTM standards (Doc. # 44 at Exhibit 2).  ASTM F1166-88 specifically governs standard practices for human engineering design for marine systems, equipment and facilities.  Section 31 of that standard governs "workspace design requirements."  Moreover, to the extent Defendant seeks to preclude Huston from relying upon ASTM F1166-95, because ASTM F1166-88 is identical to ASTM F1166-95 (Huston Depo at p. 46), Huston's reliance in his report on the 1995 version is of no consequence.

8

**B.     Coast Guard Regulations governing Passenger Vessels and Ohio Building Code Regulations**

It is undisputed that the M/V Pleasant is not a passenger vessel as defined by Coast Guard regulations.  *See* 46 C.F.R. § 70.10-1; footnote 3 herein.  For this reason, Huston's reliance in his report on clearly inapplicable Coast Guard regulations governing passenger vessels[4] is inappropriate.  While Huston opines the safety principles in these regulations apply equally to non-passengers vessels (Huston's Report at p. 5), the Court will not permit Huston to rely upon or testify about regulations which by definition, do not apply to the M/V Pleasant.  For the same reasons, the Court will preclude Huston from relying upon or testifying about Ohio Building Code regulations which are also inapplicable to towing vessels.

Additionally, even if the Court were to conclude the Coast Guard regulations or Ohio Building Code were relevant to the issues the jury will be called on to decide, the Court would preclude reliance on the regulations pursuant to FRE 403.  Any analogous value of using those regulations is substantially outweighed by the danger of unfair prejudice, confusion of the issues, and misleading the jury.

**V.     Conclusion**

For the reasons stated herein, **IT IS ORDERED THAT –**

(1)     Defendant's renewed *Daubert* motion *in limine* seeking to exclude the testimony of Dr. Huston (Doc. # 41) be, and is, hereby **DENIED IN PART** and **GRANTED IN PART**;

---

[4]  46 C.F.R. § 72.05-20.

9

(2)     The renewed motion *in limine* is **denied** to the extent it seeks to preclude Dr. Huston from relying upon or testifying about OSHA regulations and ASTM standard F1166-88; and,

(3)     The renewed motion *in limine* is **granted** to the extent it seeks to preclude Dr. Huston from relying upon or testifying about Coast Guard regulations governing passenger vessels or Ohio building code regulations.

This 24th day of May, 2005.



Signed By:

*David L. Bunning*

United States District Judge

G:\DATA\ORDERS\Cov04\08-Order-MIL-5-24.wpd

10